We're going to move to our last case. Okay, Biscayne Beach Club Condominium Association v. Westchester Surplus Lines Insurance Company. Mr. Hacker. Good morning. Good morning. Nice to meet you. Nice to meet you, too. Good morning. Biscayne Beach's party arbitrator in this case, Blake Pica, conceitedly deliberated and decided on the award in this case, believing he would personally benefit financially from the outcome of the matter. His perceived personal interest in the outcome violated the explicit terms of the Federal Arbitration Act, the party's contract requiring impartial party arbitrators, and the Florida Arbitration Code. The trial court, nevertheless, refused to vacate the award for basically two reasons, neither of which have merit. First, the court found that Pica's belief he would receive a personal payoff from the award was mistaken and that he did not actually have the 1% contingency V deal he thought he did. That point is an obvious non sequitur. It is the belief in a personal payoff from an award that creates the inherently corrupt incentive to inflate the award. Second, the court found that Westchester waived its objection by not challenging it during the arbitration process, the appraisal process itself. Well, that seems to be a big one to me because you didn't object at the time that the disclosure was made, waited for the decision, and then a period after that only then made the objection. And you seem to hang everything on university comments, which didn't decide technically a waiver issue. It strikes me that it just can't be that you can have too much invested beforehand to object when the disclosure is made. But then being able to wait until sometime afterwards, you see the decision, and then suddenly even though you had too much invested before, you don't have too much invested now that you've lost to raise your objection. That just can't be right. So there's basically two features, I think, of an appraisal and disappraisal that make it different from the premise that I think is underlying Your Honor's question that applies in either civil litigation or even a more formal type of arbitration. So the first feature is that in civil litigation, of course you have to raise an objection no matter how late in the proceeding. It can be the last moments of a defense closing argument. If the problem arises, you have to raise your hand and make the objection. That isn't the rule in arbitration. In arbitration, as this court has consistently recognized, not just in university comments, but in Your Honor's, Chief Judge Pryor's own opinion in technicus, remember in technicus, you wrote correctly that the most important element in determining whether an objection is timely is when it was raised and what happened after it was raised before the decision. So technicus explicitly recognizes that an objection can arise too late, that it becomes unreasonable to assert it, and that's what university comments says. So we're not just relying on university comments. It's this principle in arbitration that it can come too late in the process. And then obviously I think— Well, you knew about the unsigned contingency fee before the ward issue. You knew how to object. And you chose to wait until after the ward issue. So the whole point about knowing how to object, what the district court is talking about is the Lester Martinez. When he's appointed at the beginning of the process, before the process even starts, he comes in and says, I've got a 10 percent of contingency fee, and we say, well, you can't do that. You're supposed to be impartial. And so Biscayne actually grudgingly says, OK, well, you know, we'll get somebody else. That's the beginning of the process, and it's between the parties. It doesn't change the fact that you know how to object. It does change the fact, because at that point, there's an opportunity to work with the other side and get an appropriate party. It's too late now. Literally the only way to do it at this point, the only way to do it at this point is to blow up the entire process. But you're blowing up the entire process after you know you lost, which seems to me even worse. But the other problem related to this about knowing when to object or how to object is that in an appraisal, there is no mechanism during the arbitration as there was in technicus when you have kind of a formal arbitration process where the arbitration is basically a substitute for litigation in international arbitration. In an appraisal, the lawyers don't participate. It's just the arbitrators, and nobody, I think, is saying that our party arbitrator, Lewis, you know, had the obligation of a lawyer to raise an objection and stop the process. The argument would have to be that the party is supposed to swoop in and get the court to intervene, and this is his own position below me, Your Honors. This is his own position, and a correct position, is that appraisal is supposed to be an independent process that is devoid of participation by the lawyers and the court's oversight. It's not supposed to happen. You're not contending you didn't know about it. You knew about it. That was the last day of deliberations. It was literally the final day of negotiations. And how long before the award issued? It was, when you became aware, sometime after February 3rd, the award was issued on March 11th. But the award was already done, right? The award was already settled as of February 3rd. That much we knew. We were told that it was going to be a matter of days, and it turns out, and the record shows that Mr. Pica was in a car accident, and it took a while to, like, literally sign the award. But there's nothing left to happen in the process, unlike in Technicus and unlike in every case that they cite and the district court cites. All of them, the conflict becomes apparent either before the process starts or during the process, when you can raise your hand and do something to cure it. In Technicus, they could have gotten you an attorney, right? There's no way to do anything at the end of the process. So if, Your Honor, if the rule that, if the rule you're endorsing, Your Honor, is that it was not too late here, then the rule doesn't exist. Because there's just not a scenario under which it could ever be any later than it was here. Yes, it was a matter of weeks, but the whole process was done. There's nothing left to happen. I understand the problem, though, with adopting your rule, which is allowing you to find out whether you like the result or not, and then to object. But that's already understood in the Technicus and the University Commons point that objections can be, come up too late to be reasonable to object. It's not in the arbitration process. University Commons says that. I'm just not aware of any, it says that, some of, I think a lot of what it says about that is dicta. I don't think there's a case where we've ever said, well, it was just too late. The two months that it was Technicus, that was the most important element, is the timing, which presupposes. I know, but we, I mean, you knew everything you needed to know more than a month before the award. Yes, Your Honor. The first thing we did was ask for discovery so we could find out more about what he meant when he said, I've got a percentage of this award. We didn't know all that we needed to know. Well, but wasn't the same true with Martinez, that you knew he was going to have a percentage of the award and that's what you objected to? We had exclusively said before the process started, I've got a 10% award. Yeah, but that's the same thing. It has nothing to do with how much detail. No, but that's not true. Before it starts, it's reasonable at that point to say, the contract says impartial, you're not acting impartial, and there was an agreement to do that. I'm unclear about something about the facts. Was there a set period during which, or was there a deadline by which the appraisers had to issue a decision? So, when you say, it was on the last day of deliberations, is that something you found out after the facts or something you knew at the time? Because the party negotiators are allowed to communicate with the parties, we knew at some point that the negotiations were essentially over, that it was going to be a matter of days before. Wait a minute. Let's unpack that. We knew at some point, right? So, when the disclosure is made, what do you know? Well, I don't know the record reflects whether we, you know, we certainly didn't know that instant, right? The disclosure is made minutes before the meeting is about to start on the final negotiations. That's what PICA's word is. Then they go through that, have that meeting, and then, you know, sometime thereafter, we get word from our arbitrator, Lewis, that this is occurring, and that the award's about to be issued. So there's like, you know, literally the only thing that could be done at that point would be to file a motion in the district court to assert this objection and join the appraisal process. But the rule you're suggesting, Your Honor, would say that in order to preserve any objection that comes up, lawyers have to constantly file motions in court to raise objections during the appraisal process. I don't understand how that follows. I agree that would be a problem, but I don't understand how it follows because to go back to Judge Jill Pryor's question, I mean, couldn't you have just done what you did earlier and just tell the appraisers, hey, you know, we've learned about this. This seems like a serious problem. It seems like this is, means that he's partial, and then you've raised the objection in that process. So two answers on that. First of all, that wouldn't even be a formal objection. That would just be a discussion with the other side, and I think it presupposes correctly that there's not a mechanism within an appraisal to assert an objection. Appraisal's supposed to be, Your Honor, such an important point, an appraisal's supposed to be independent of the parties and the lawyers. The last thing anybody in an appraisal wants is lawyers hectoring them all the time and filing motions and making phone calls and, you know, sending threatening letters. They were upset when we sent a litigation hold at one point because lawyers were interfering with the process, and they weren't supposed to be interfering with the process. Look at Ms. Cain's own filings below, Your Honor. Joint Status Report 8 and their answer to the motion to vacate. What does Ms. Cain say about how the objections are supposed to work? Ms. Cain's position below was that you are not supposed to file objections during an appraisal. It's not the appropriate time to do it. The only way in Florida an appraisal objection is supposed to be asserted, said Ms. Cain, to us and to the court, was after the appraisal is over because you don't want lawyers interfering with the process. You don't want the court. It's supposed to go off, happen between the three appraisers. If that's right, if that's right, then the lack of knowledge about everything is irrelevant. I mean, so as I understand it, your argument then is that it would never be proper to rate if you learn at a late date everything you need to know to make the objection because it's an appraisal and the process is ongoing. You shouldn't make the objection. That's their position. Ms. Cain's argument below is that... Do you think... Is that your position? Certainly. It comes late in the process when the party's been made this huge investment of resources. The idea that you would blow it up at the very end when there's literally no way to  Normally, you raise an objection so they can be cured. It can't be cured here except to start the thing completely over, which is not true in  Well, at least you don't know what the final answer is. The sandbagging element to me just seems... The gamesmanship is what just to me has to cut against you. And if I can answer that, what I think is underlying your opinion in technicus and university commons and the difference between arbitration and civil litigation is that in arbitration, the parties are making... It's a private resolution process. They're making an investment of resources and spending money on it, and in that process, when it goes... It's one party lets it go all the way to the end. Remember, this was their exposure to the late to the end, puts us in this position. It wasn't our fault we learned about it at the very end. At that... It's just different in arbitration to say when a party says, we've gone through this whole thing. Let's just see what happens. And if we don't have a problem, then we don't have a problem and everybody's fine because the arbitration is complete. The alternative would be to deprive us of the benefits of a complete arbitration because they disclosed something at the very end of the process. Remember, in arbitration, it sort of shifts the equities when they are the ones who disclosed something late and put us in this impossible situation. The problem isn't sandbagging on our part. It's their late disclosure and technicus and university commons recognize that under those circumstances, if that rule exists at all, your honor, this is a case where it was too late to be... To as reasonably expect an objection. Thank you. Mr. Huck. Good morning. May it please the court. Paul Huck on behalf of the Appalachian Biscayne Beach. Your honors, at its core, Westchester's complaint is that the district court should have given more weight to some parts of the record evidence than to others. But the district court's factual findings, whether they relate to the issue of waiver or to evident impartiality, are reviewed by this court for clear error with deference also given to the trial court's credibility determinations. And as this court has stated in life care, questions regarding evident impartiality necessarily entail a fact-intensive inquiry that's highly dependent on the unique factual settings of each case. And because in light of the record, when it's looked at in its entirety, the district court's findings were not clearly erroneous. And it seems to me whether, given what the facts are, whether the waiver occurred is a legal question. And your honor... That we reviewed to know that. Your honor, to the extent that the trial court is making determinations about gamesmanship, I think those are factual findings because the trial court... Not if there's no dispute about what happened. I mean, what you infer from that, you know, the problem that produces or could encourage gamesmanship, that's a different issue, okay? How this actually transpired, when certain things happened, what certain parties knew, when certain parties objected, those... We know what all the facts are about that. And there's that, you know, if there were disputes about those facts, we would review any resolution of those disputes for clear error. But knowing what those facts are, we review then whether that means there was a waiver de novo. Right. Your honor, to be clear, I think there was, at least on my part, some misunderstanding as to what the concession was about what the appellant knew at the time. And I think that's been clarified in today's ruling in favor of the court. There's no dispute that Mr. Pikus sent his email to the other appraisers on February 3rd. Was it your position below, as your adversary says, that it would have been inappropriate to object when you're now contending they should have objected? Well, I can't say as to this particular issue whether the position was it would have been inappropriate below. The trial court obviously disagreed with that, and the trial court fought this court's legal precedents, including Technicus. I'm just interested in knowing, does the record, would the record suggest that you would have thought that it was your position that it would have been improper to object at that time? Well, our position is that the case law is clear that they have to raise their objection. And so if there was a legal error below, the trial court would have rejected that. I actually agree with that, okay? That's what the case law says, that you have to object at the time. Now Mr. Hutt, will you answer my question? I will answer your question, your honor. Okay, fair enough. What I do know is that the trial court looked at the case law and followed this court's precedents. In fact, just to kind of put a fine point on it, this court did address in Technicus, this court did address what University Commons held, and this court in Technicus said that in University Commons, it's a quote, we held that the party seeking to vacate the award didn't waive its objection to the arbitrator's potential bias because the party did not have full knowledge of the facts underlying the objection. Here, of course, we're not in that situation because it's clear they had full knowledge as that concept has been described and explained by this court as to what the potential conflict was or the potential impartiality was. And at that point, they were on notice of it. The timing is that that disclosure was on February 3rd. The appraisal was signed, the umpire was the final signatory to it. Looking at the record, it appears to me he signed it on the 12th of March, which is about just over a month later. Westchester then files its motion to conduct limited discovery on April 10th and files its first motion to vacate on June 10th. So I think it's unclear what Westchester knew about the status of the appraisal when it was thinking about objecting. But what we do know is that they were 17 months in, and our case law says that at some point it becomes unreasonable to object because of the investment. So I'm curious about that. At this point, lots of time and money presumably has been spent on the appraisal process. So why wasn't it unreasonable to object at that point? Well, there is evidence that Westchester knew that this was imminent coming down. Well, as I said, though, we know we're 17 months in at this point. The point is that it's really six in one or half dozen in the other because now we're at the same point we would have been if they'd objected back then. But the trial court doesn't have a chance to address it and correct it. So while there may have been a need to restart it, if the court were to conclude that this was not a waiver, we're going to be right back there starting it all over again after having expended more time and effort going through this process. So the fact of the matter is that if you don't know when that decision is coming down, but you do know of a problem that you should object to, the technicus tells us you've got to object. And then let the trial court make the determination about what it wants to do, whether it can cure it in any way, shape, or form, or whether it needs to restart the process. I guess I would say, I mean, we're all kind of operating on this assumption that there was nothing that could have been done before the appraisers came back. But, I mean, that doesn't seem necessarily right to me because it seems like the appraiser that was arguably conflicted could have said, you know, okay, I won't participate in this or could have said, I'm actually not conflicted, I've figured this out, turns out that was an error. So it seems like there could have been a resolution of this, right? Yeah, exactly right, which is why to raise it then is what's necessary. And if you look at the insurance policy and the appraisal portion of that, the appraisal award can be decided by a two out of three vote. It does not require it to be unanimous. In this case, the appraisal award was unanimous. But the trial court could have said, you're out, and will proceed with the umpire and the insurers. There's a variety of things that could have happened. Or again, they could have done a little more factual digging at the time and determined that he, in fact, was mistaken. He did not have a contingency fee agreement, he was on an hourly rate with the district. Can you answer this question for me, which maybe is irrelevant here, but I do have, if we were to get to it, I guess I have some concerns about the district court's fact finding on whether he was partial. It seems like the district court was saying on that, that because he didn't actually have a contingency fee agreement, he was not partial. But that doesn't seem to fully address the partiality. I find some persuasiveness to their argument that if he thought he had a contingency agreement, it doesn't matter whether he had one or not, that that implicated his partiality. What do you say about that? Well, there's a couple of responses to that. The first one is, in his deposition testimony, he was asked repeatedly, so on February 3rd, did you think you had a contingency fee agreement? He said no, and then he explained why. Other question, did you believe that you had a contingency fee agreement? He said no, and he explained why. And some of those portions are actually quoted by the district court in its decision and in its findings about whether there was partiality or not. So he was being asked whether he had a subjective belief or not. The record has, the record is, I'm not going to tell you that the record is black and white on this issue. There's a variety of things in the record about what he understood his agreement to be. The trial court having the full record in front of him with all of the facts relating to things like the volume of his work that he was doing. What he had been expressly told twice by counsel for Biscayne about what his arrangements were. What the nature of the award was, the fact that it was unanimous. Things like that, the trial court was certainly, it was certainly plausible for the trial court to conclude that there was not evident partiality here. Let me ask another question about, and it struck me as just odd that there would be confusion about whether he had a contingency fee agreement. Can you just explain to me why anyone would hire an appraiser on a contingency fee agreement? Just the whole thing, the fact that this came up twice in the same appraisal, just sort of stunk to me in and of itself. Does that make sense? Yes, it does. I want to point to one thing in the record where you'll notice because it's jumped out at me where Mr. Pikus says, we were in Miami so I looked at a contingency fee arrangement that I had and one of the cases that was cited, I think it's in Wes Chester's initial brief, is the Parrish case from the Florida Supreme Court. That was a 2023 case and in that case, the court, the Florida Supreme Court concluded that you could not have an appraiser on a contingency fee agreement. How did that issue get to the Florida Supreme Court? Well, there was a split on the Intermediate District Courts of Appeal in Florida. The Second Circuit, which is the Tampa area, said you cannot do that. Sorry, the Second DCA. The Third DCA, which covers Miami and the Florida Keys said you can do that for to have a disinterested appraiser can be on a contingency fee agreement. So that is how, why that would be out there, so to speak, in the wild in an appraiser's  In 2023, the Florida Supreme Court resolved that district court split and we know in Florida you can no longer do that period yet. Okay. So this is a Miami-specific issue, is what you're saying. I don't know. It just strikes me. It would be very funny. I could just hear the Tampa people saying, yeah, well, the Miami people would think contingency is not a problem.  When I was looking at that and so I, if you look at the Parrish case, you'll see that that Third DCA, which is the Miami Appellate Court case, came out in 2018. This is all happening around that same time. So that is out there in the wild, so to speak, at this time. Your Honor, if you don't have any further questions, we'll rest on our brief. Thank you, Mr. Huck. Mr. Hacker, you've saved four minutes. Thank you, Judge Brasher. Your question is maybe a better one, more relevant to this case than you realize because I think Mr. Huck is basically, he's right about the history and the law in Florida. That actually explains exactly why Pika thought it was fine all along, that he was under a contingency and that's how he operated during the process. He says this in his deposition at page 71. If you look at it, I thought it was legal in Miami. That's why I sent in August. Remember in August, he sends the contingency agreement, the retention agreement twice and it includes a contingency fee and he says in his deposition, I thought it was fine because it was fine for a party arbitrator to do that at that point and accept that. The contract here, which I think he was unaware of, wouldn't really know, but the contract says you have to be impartial, which is understood to be disinterested. I don't think he was aware of that. So he's operating under this misimpression of the law and the contract. That's the partiality that is just undisputed. There's no finding here that by the court that he didn't believe it. As we say in the brief and I think that it's clear from the opinion, all the court said is that there wasn't actually an agreement. She never said that he didn't believe it and he says under oath multiple times that he believes it. That's what his affidavit says, sworn affidavit says, I believe that a contingency fee agreement. At his deposition, he reaffirms that paragraph. I believe that had a contingency of agreement. She doesn't endorse at any point these other sort of confused claims like she didn't believe it. She never says anything about it. The only finding is that there wasn't one. So if we were to get over the waiver issue and if we were to agree with you about that reading of the record, would we remand for the district court to make a fact finding on that? I mean, that seems like maybe the proper result. Is that what you're asking us to do? We're asking you to remand for just a new appraisal essentially. Yeah, but I guess, you know, it seems like, and I think you're right about your understanding of the record. It seems like there's evidence that sort of goes both ways on whether he actually thought he had a partial contingency fee agreement. We don't have a fact finding on whether he thought he did or not. I'm just saying he can't escape his own multiple statements under oath that he thought he had a fact finding agreement. And that's after the contemporaneous email when he tells his other pals, I have a contingency of agreement. That's what the email says. He doubles down on it in real time. So I don't think there's a basis for fact finding he didn't think it at the time. The fact finding was it didn't exist. But the fact that he was influenced by it, the fact that it existed, and he was subject to that incentive, I don't think can be contradicted at all. On the point to... Well, in his deposition, he does say he didn't believe it. But he also says he does. That's... Right, and that's a question of fact. Right. It's overwhelming at the point. Whatever he's saying in a... Overwhelming. That sounds like a jury argument. Well, I think it's unreasonable to lie into the contradiction of what he says over and over and over again under oath and in real time. What you're saying is if we looked at that record to send it back and for the district court to make the opposite finding would necessarily be clearly erroneous? Yes. I think that's right. But look, if you send it back for that finding, well, I'm not going to be upset about it. I think as it stands, the one thing we can know right now is the appraisal on this record just... He might be upset about it if he makes that finding. It's a lot easier to develop the record further on that and to get him under oath to explain how on earth he swore multiple times that he believed, you know, were you lying then or are you lying now kind of question. I don't know how he's ever going to escape that. Look at joint status report number eight, your honor, look at their opposition to our motion to reopen. You'll see it's unambiguous. They say the right way to do this in an appraisal in Florida is to leave the appraisal alone and raise your objections after the fact. That was their position below. Under the case law, your honor, none of the case law that you're talking about and referring to involves this kind of appraisal where the court is supposed to stay out of it. The lawyers are supposed to stay out of it and not be raising objections. And even the cases that we do have on formal arbitrations, again, unless Technicus is just wrong and says the timing is not the most important thing about whether it's properly preserved, then this is that case, right, at the very end of the process. There's nothing, there's no process happening anymore. That's a mystery. Okay, Mr. Hatcher, I think we understand your case. We are adjourned for the week. Thank you, your honor. All rise.